[No. B018298. Second Dist., Div. Six. Feb. 11, 1987.]

FRED L. FREDERICKS, Plaintiff, Cross-defendant and Respondent, v. KONTOS INDUSTRIES, INC., Defendant, Cross-complainant and Appellant.

COUNSEL

Beck & De Corso, Mark E. Beck and Anthony A. De Corso for Defendant, Cross-complainant and Appellant.

Marvin Zinman for Plaintiff, Cross-defendant and Respondent.

OPINION

**GILBERT, J.**—Here we hold that an admission by a party under Code of Civil Procedure section 2033[1] is usually conclusive, but in certain cases the trial court has discretion to determine its scope and effect. (*Milton* v. *Montgomery Ward & Co. Inc.* (1973) 33 Cal.App.3d 133, 138 [108 Cal.Rptr. 726].)

Spero Kontos is the president of defendant Kontos Industries Incorporated (Kontos). Kontos appeals the judgment awarded Fredericks. We affirm.

*Facts*

Fredericks builds and operates movie theaters. Kontos provides interior furnishings for movie theaters. Fredericks was planning to build a theater in Buellton. In early March 1984, he met with Kontos to discuss using Kontos's services to "outfit" the theater. During the discussions, Kontos suggested progress payments for the contract. Fredericks neither acceded nor objected to the suggestion. On March 6, 1984, Kontos sent Fredericks a revised offer to outfit the theater. Included with the offer was an itemized list of materials, the price for the job, an approximate shipping date and a proposed payment schedule. The letter in part stated: "Our normal financial terms are based on progressive payments, as follows:

---

[1]All references are to the Code of Civil Procedure unless otherwise specified.

| "With order (25%) | $56,000.00 |
|---|---|
| "May 1, 1984 (25%) | $56,000.00 |
| "Prior to Shipment (25%) | $56,000.00 |
| "Upon completion of installation or upon opening (15%) | $33,000.00 |
| "Retention—30 days after opening (10%) | $22,626.37 |
| "Total Contract | $223,626.37" |

Kontos also requested that Fredericks send him a letter accepting the offer, along with the deposit shown in the payment schedule.

On March 12, 1984, Fredericks accepted Kontos's offer by sending him a letter referring to the March 6 letter, the itemized proposal, the price agreed upon and the estimated opening date of July 1, 1984. He enclosed a deposit check for $56,000, but he did not refer to the payment schedule.

The first payment under the schedule was due May 1, 1984. Because of construction delays caused by Fredericks, the theater was not ready for outfitting. Kontos did not ask Fredericks for the May 1 payment, nor did he send a bill. Kontos testified that his intention, at the time they entered into the contract, was not to demand payment until construction on the theater progressed.

It was not until September 1984 that Kontos asked Fredericks for further payment. Fredericks refused because he saw no progress on Kontos' part and had agreed to make payments only when Kontos made progress towards outfitting the theater. The court found that Kontos had made very little progress.

On November 12, 1984, Fredericks sent Kontos a letter by certified mail restating his position that he would make further payments only if Kontos performed. He stated that unless Kontos sent him written assurance by November 19, 1984, that he would complete the agreement, Fredericks would consider it terminated, would go elsewhere to have the work done and would demand refund of his $56,000 deposit. Fredericks would thus repudiate the contract in anticipation of Kontos's breach.

Kontos failed to respond in time. He sent Fredericks a letter dated December 4, 1984, stating that he desired to continue the job, and that he

would complete it if reasonable progress payments were made. Fredericks, however, had already arranged with another company to perform the work on his theater.

On January 28, 1985, Fredericks filed his complaint alleging breach of an oral contract, quasi-contract and constructive trust. On April 12, 1985, Kontos filed a cross-complaint alleging breach of a written contract, two common counts in assumpsit and quasi-contract.

In June 1985, Kontos sent Fredericks a request for admissions under section 2033. Fredericks admitted that he had agreed to make progressive payments to Kontos according to the schedule set forth in the March 6 documents.

Although the court initially found the parties had entered into a written contract, it ultimately concluded that Fredericks was entitled to a refund of his deposit, less minor offsets, on the basis of unjust enrichment. The court stated that the parties had no intention of financing each other and that they did not come to an understanding concerning the payment schedule despite Fredericks's admission, his acceptance letter and his initial payment on the contract.

Kontos argues that the court committed prejudicial error by finding that the parties had not agreed to the "progressive" payment schedule. He asserts the court is bound by Fredericks's admission and is compelled to find that Fredericks breached the contract. We disagree.

### Discussion

### Effect of the admission

The trial court ruled that an admission is merely a piece of evidence which may be contradicted by other evidence. Kontos argues that an admission is conclusive and binding on the party making it. As a rule, Kontos's position is correct, but that does not change the result here.

"Although the request for admissions is placed in a discovery statute, it is *not a discovery device*. Its objective is the same as that of the pretrial conference: To obtain admission of uncontroverted facts learned through other discovery methods, and thereby to narrow the issues and save the time and expense of preparing for unnecessary proof." (2 Witkin, Cal. Evidence (3d ed. 1986) Discovery and Production of Evidence, § 1553, p. 1506; see especially *Lieb* v. *Superior Court* (1962) 199 Cal.App.2d 364, 368 [18

Cal.Rptr. 705], and *Hillman* v. *Stults* (1968) 263 Cal.App.2d 848, 885 [70 Cal.Rptr. 295].)

Kontos cites cases in which admissions were deemed conclusive. In *Bank of America* v. *Baker* (1965) 238 Cal.App.2d 778 [48 Cal.Rptr. 165], a failure to answer a request for an admission was deemed an admission to the matter contained in the request. In *Miller* v. *Marina Mercy Hospital* (1984) 157 Cal.App.3d 765 [204 Cal.Rptr. 62], the failure to answer a request for an admission was deemed an admission in a summary judgment motion.

██ Although admissions are dispositive in most cases, a trial court retains discretion to determine their scope and effect. An admission of a fact may be misleading. In those cases in which the court determines that an admission may be susceptible of different meanings, the court must use its discretion to determine the scope and effect of the admission so that it accurately reflects what facts are admitted in the light of other evidence.

██ Fredericks admitted that under the contract progress payments were to be made, but he explained that these payments were dependent upon work being performed by Kontos. Kontos's intention at the time the contract was made was not to demand the May 1 payment until construction on the theater warranted it. Thus both parties did not intend the dates in the payment schedule to be sacrosanct.

The more narrow the language in the request for an admission, the less opportunity the court has to determine its scope and effect. If, for example, the request for admission propounded to Fredericks in the instant case said, "Did you agree to make progressive payments to Kontos according to the schedule set forth in the March 6 documents irrespective of work performed by Kontos?" there would have been no issue as to the party's intentions concerning the payment schedule. The court therefore would have had no reason to admit parol evidence on this issue.

In *Milton* v. *Montgomery Ward & Co., Inc., supra,* 33 Cal.App.3d 133, the plaintiff in a personal injury action was deemed to have admitted certain requests for admissions concerning his injuries. Plaintiff admitted that there were osteoarthritic spurs on his lower dorsal spine, that X-rays revealed no evidence of a compression injury, and that none of the physicians who treated him could say with reasonable medical certainty that his condition could have caused the accident in question. Nevertheless, plaintiff was permitted to testify about other hospitalizations and to introduce testimony showing a connection between his injuries and the accident.

*Milton's* holding is applicable to the case at bench even though its facts are different. *Milton* held that "after a matter is deemed admitted, the scope

and effect of the admission must be determined by the trial court. The trial court has broad discretion in determining the admissibility and relevance of evidence. [Citations.]" (*Milton, supra,* 33 Cal.App.3d at p. 138.) In *Milton,* plaintiff's admissions merely reflected his opinions with which the jury could disagree. In the case at bench, the admission established that Fredericks agreed to a payment schedule, but parol evidence established that the payments were subject to performance.

*Milton* recognized the power of the trial court to determine the admissibility and relevance of evidence related to admitted facts. Here, the trial court properly admitted evidence of the party's understanding of the progress payment schedule. Evidence of this understanding did not contradict the fact admitted, but rather explained it. ▮ The court must have discretion to admit evidence to elucidate and explain an admission, because the admission of a fact does not always reflect the party's reasonable understanding of that fact.

It is through the court's discretion to determine the admissibility and relevance of evidence that a trial accurately reflects events rather than distorts them. An admission under section 2033, as a rule, conclusively establishes the fact admitted,[2] but the admission of a fact may be deceptive when the fact admitted may have different meanings. Through the court's discretion to admit evidence that explains the scope and effect of such an admission, the court ensures that the request for the admission is not misused as a device to hide or confuse issues.

Kontos asserts, however, that legislative response to the *Milton* case destroyed this discretion, citing *Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 237 [211 Cal.Rptr. 416, 695 P.2d 713]. *Elston* concerned the failure of an attorney to seek relief under section 473 for failure to respond to a request for admissions. The trial court had denied the motion for relief and summary judgment ensued. The Supreme Court reversed. It held that since the law strongly favors trials on the merits, and since excusable neglect had been shown, it was an abuse of discretion to deny the motion under section 473. (*Elston* v. *City of Turlock, supra,* 38 Cal.3d at p. 233.)

The Supreme Court stated that the 1978 amendments to section 2033 were

---

[2]The new discovery law, operative July 1, 1987, codifies this rule. (See § 2033, subd. (n).) Instructions are provided on how to answer requests for admissions (§ 2033, subds. (f)(1) and (f)(2)), and the trial court is given discretion to allow amendment or withdrawal of an admission. (§ 2033, subd. (m).) This new version of section 2033 appears to bring California practice into line with federal practice. (See 2 Hogan, Modern Cal. Discovery (3d ed. 1981) § 9.13, p. 166 et. seq. and the supplement at pp. 31-32 (Nov. 1986).)

designed to ameliorate concerns that the section was unduly harsh. The court explained that by ensuring sufficient time to respond to a requ est for admissions and by requiring notice that the consequence of a failure to respond would be deemed an admission to the question propounded, the Legislature had ". . . dispelled any lingering confusion as to whether matters would be deemed admitted automatically or only pursuant to court order." (*Elston* v. *City of Turlock, supra,* 38 Cal.3d at p. 237.) Thus, a party could no longer attempt to move for relief at trial under section 2033, subd. (a), for failure to respond to a request for admissions. To obtain relief, a party is now required to seek it within 30 days of default (see § 2033, subd. (a)). *Elston,* however, did not disapprove *Milton.*

### The judgment and variance

■ The judgment in favor of Fredericks is correct, but not under the theory of unjust enrichment used by the trial court. The error is not grounds for reversal. ■ A judgment correct on any theory applicable to the case will be upheld, even though the court based its decision on an inapplicable theory. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10].)

■ The theory of unjust enrichment is at odds with the court's finding, amply supported by the record, that the parties had entered into a written contract. The proper theory, breach of the written contract, was not pled by Fredericks. Fredericks pled breach of an oral contract.

Kontos, however, pled breach of a written contract in his cross-complaint and defended on that ground. Under section 469, no variance between the allegations and proof is deemed material unless it has actually misled the adverse party to his prejudice. (*Chelini* v. *Nieri* (1948) 32 Cal.2d 480, 484-486 [196 P.2d 915]; *General Credit Corp.* v. *Pichel* (1975) 44 Cal.App.3d 844, 849-851 [118 Cal.Rptr. 913].) The same set of facts supports the judgment based upon the written contract, which the defendant placed into controversy by his cross-complaint. (*General Credit Corp.* v. *Pichel, supra,* at pp. 849-851; also see *McCully* v. *Gano* (1931) 116 Cal.App. 695, 698 [3 P.2d 348].)

It has long been recognized that this court has the power to modify the conclusion of the court below, where the record supports it. (*Shelby* v. *Houston* (1869) 38 Cal. 410, 420; *Fox* v. *Hale & Norcross S. M. Co.* (1898) 122 Cal. 219, 221-222 [54 P. 731]; accord *Babcock* v. *Antis* (1979) 94 Cal.App.3d 823, 831 [152 Cal.Rptr. 673]; § 43; Cal. Const., art. VI, § 13.)

The judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.