[No. H019557. Sixth Dist. July 18, 2000.]

ROGER BURCH et al., Plaintiffs and Respondents, v.
NICHOLAS GOMBOS et al., Defendants and Appellants.

KATHY DEAN et al., Plaintiffs and Appellants, v.
ROGER BURCH et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Richard A. van't Rood, Richard A. van't Rood and Steven R. Levy for Plaintiffs and Appellants.

Hallgrimson, McNichols, McNichols, Randick, O'Dea & Tooliatos, Kevin W. Wheelwright and Donald A. Odell for Plaintiffs and Respondents.

## OPINION

**COTTLE, P. J.**—Appellants own property in the Santa Cruz Mountains on Summit Road. They privately own the portion of the road that crosses their property. Appellants sued to prevent respondents from using that portion of the road to conduct logging operations. Respondents filed suit the same day to prevent appellants from impeding their use of the disputed portion of the road. The two actions were consolidated.

The trial court found that the portion of the road in issue has been impliedly dedicated to the public as a result of public recreational use of the road in the 1950's and 1960's. The court enjoined appellants from interfering with respondents' use of the road, and denied appellants' cross-request for injunctive relief.

Appellants contend the court erred in permitting respondents to introduce evidence of public use of the roadway, because respondents had previously responded to a request for admission by admitting they had no such evidence, which was true at the time. We hold that respondents had no duty to update their response to the request for admission when they subsequently discovered such evidence.

Appellants further contend that the evidence does not support a finding of a public dedication sufficient to permit respondents' commercial logging activities. While substantial evidence supports the finding of an implied dedication, we conclude that an issue remains as to the *scope* of the implied dedication: Did the public recreational use of the roadway support an implied dedication that thereafter would permit commercial logging operations on the road? The trial court orally indicated it was reserving this question for further proceedings, but certain statements in the court's written decision suggest that the court eventually concluded the question was irrelevant. Additionally, the denial of injunctive relief to appellants had the effect of deciding the issue in respondents' favor.

We will affirm the trial court's ruling granting injunctive relief to respondents because the court correctly concluded the roadway is now public and it is inappropriate for appellants to engage in "self-help" to restrict the *type* of public usage. We will reverse the denial of injunctive relief to appellants and remand for a determination of the scope of the public dedication. If the court concludes the dedication was too limited to permit commercial logging operations on the roadway, appellants will then be entitled to injunctive relief.

## BACKGROUND

Appellants are Kathy Dean, Nicholas Gombos and Asha Pandya (collectively Dean). Respondents are Roger Burch, and his wholly owned corporation, Pacific States Industries, Inc., which does business as Redwood Empire (collectively Redwood Empire). The section of the road in dispute is a one lane dirt roadway approximately three-quarters of a mile long. It was originally constructed in the late 1930's by the California Department of Forestry (CDF) as a fire road. The director of the CDF assured the then owners of the property that the road could never become public because they had signed written license agreements with the CDF to permit construction and use of the road. The trial court characterized that assurance as incorrect legal information.

At some point in the early 1970's, the CDF quit maintaining the road. Dean is a member of a voluntary neighborhood association that was formed to maintain those portions of the Summit Road that are not maintained by the County of Santa Clara or the County of Santa Cruz.

In April 1997, a few months after these actions were filed, Dean propounded the following request for admission: "Admit that you have no evidence of recreational use of the disputed portion of Summit Road prior to March 4, 1972."[1] Redwood Empire replied to the request with an unqualified admission.

In August 1998, approximately five weeks before trial, Redwood Empire sought summary judgment. In connection with that motion, Redwood Empire submitted evidence of public recreational use of the road in the 1950's and 1960's.[2] Dean asserts this was the first time she became aware that Redwood Empire had such evidence.[3]

---

[1]As of March 4, 1972, certain statutory changes limited the circumstances under which an implied dedication may be found, so it was important to Redwood Empire that there be evidence of recreational use prior to that date. (See Stats. 1971, ch. 941, p. 1845, amending Civ. Code, § 813 and adding Civ. Code, § 1009.) The statutory changes operated prospectively only. (*Id.* at § 3, p. 1848; *Bess v. County of Humboldt* (1992) 3 Cal.App.4th 1544, 1550, fn. 3 [5 Cal.Rptr.2d 399].)

[2]Redwood Empire submitted the evidence long after filing its moving papers. The trial court apparently denied the motion based at least in part on the untimeliness of the submission.

[3]The record shows Dean was aware of at least some of the evidence a few days earlier, because it came out in a deposition that her counsel attended. There is no dispute, however, that it was not until this general time period that Dean learned Redwood Empire had located witnesses who would testify to public recreational use of the road prior to 1972.

At the commencement of trial appellants apparently filed a written motion in limine to exclude any evidence of recreational use prior to 1972.[4] Because the court bifurcated the equitable issues and tried them first without a jury, the parties agreed that the court need not address the motions in limine until the specific evidentiary issues arose.

The first witness that Redwood Empire offered to testify about recreational use prior to 1972 was Georgia Metzger. Metzger testified that as a teenager in the 1960's she traveled on the road numerous times, and saw other people doing the same. She described the road as a "common place for us as teenagers to enjoy." For reasons not apparent from the face of the record, nor explained in Dean's briefing, Dean did not object to this testimony or ask that her motion in limine be decided prior to its introduction.

The next witness to testify on the subject of pre-1972 usage of the road was John Nelson. When Nelson was called, Dean did object and ask that her motion in limine be addressed. After substantial argument, the court took a recess to read *Fredericks v. Kontos Industries, Inc.* (1987) 189 Cal.App.3d 272 [234 Cal.Rptr. 395]. After the recess the court denied the motion, relying on *Fredericks*. Nelson then testified to traveling on the road numerous times as a child in the 1950's, while pigeon hunting with his father. He saw an unspecified number of other people traversing the road in that same time period.

Nelson further testified that he and fellow motorcycle riders also traveled the road "[a]lmost every weekend when [they] could" between the mid-1960's and the mid-1970's. Nelson traveled with groups of two or three or "sometimes 10 or 15 . . . or more." He also saw "a lot of four wheel drives, shooting, hiking" on many occasions.

Finally, Keith Cornick testified that he traversed the road "[l]iterally probably hundreds of times" in the 1950's in connection with motorcycle racing. He also observed many others "riding, driving cars, and pigeon hunters." Cornick testified that by the late 1960's traffic was increasing and by the 1970's the volume of traffic precluded staging motorcycle races any longer. While Dean did not specifically object to any of this testimony, her motion in limine had already been denied and it obviously would have been futile to do so.

Dean offered no evidence controverting the testimony of Metzger, Nelson, and Cornick regarding public recreational usage of the roadway. Dean

[4] There are no motions in limine in the clerk's transcript, but the trial court stated on the record that it had spent time reading through the motions in limine.

instead made various legal arguments that no public dedication could be found based on the evidence. The trial court disagreed and found that the road had been impliedly dedicated to the public prior to 1972.[5]

Dean further argued that even if there had been a dedication permitting the public to use the roadway for recreational and similar purposes, the dedication was too limited to permit the heavy truck and machinery traffic used in Redwood Empire's logging operations. As noted, the trial court orally stated that it was not deciding that issue. The trial court suggested that issue was "for another day and another time."[6]

Redwood Empire argued that there simply was no issue over the scope of the dedication. In Redwood Empire's view, "a road is a road is a road" and if there has been a public dedication of the road then it can be used for any purpose not otherwise unlawful.

The trial court's written statement of decision appears to adopt Redwood Empire's position, or something close to it. The court stated, "[a] road can only be dedicated and used as a road, and such dedication does not specify the type of vehicles that can be used on that road." As noted, the trial court also denied Dean's request for injunctive relief. Thus, whether or not the court intended to address the scope of the dedication, it effectively has ruled that Redwood Empire has the legal right to use the road for its logging operations.[7]

## DISCUSSION

### A. *The Request for Admission*

■ Code of Civil Procedure section 2033 authorizes a party to propound requests for admissions (RFA's). Although this section appears within the provisions of the Discovery Act of 1986 (Code Civ. Proc., § 2016 et seq.), Dean correctly points out that RFA's serve a somewhat different purpose than other discovery devices. Indeed, Witkin goes so far as to say that an

---

[5]The trial court rejected Redwood Empire's alternative claim that it had a prescriptive easement to conduct logging operations over the road. That issue is not before us in this appeal.

[6]In view of the trial court's comments, we requested that the parties inform us whether there had been further proceedings to determine the scope of the dedication. Dean provided copies of two posttrial orders that she argues show the court has "impliedly" decided that logging is within the scope of dedication, but Dean represents there have been no further proceedings to address the issue explicitly. Upon remand the court should hold a further hearing to decide the issue. We leave it to the trial court to decide if it wishes to take additional evidence or simply to decide the issue on the record already developed.

[7]The court did leave open the possibility of Dean stating a nuisance claim or other claims for the threats to public safety or physical injury to the road.

RFA "is *not a discovery device*. Its objective is the same as that of the pretrial conference: [t]o obtain admissions of uncontroverted facts learned through other discovery methods, and thereby to narrow the issues and save the time and expense of preparing for unnecessary proof." (2 Witkin, Cal. Evidence (3d ed. 1986) Discovery and Production of Evidence, § 1553, p. 1506, italics in original; but see Code Civ. Proc., § 2019, subd. (a) ["Any party may obtain discovery by one or more of the following methods . . . [¶] . . . [¶] (5) Requests for admissions."].)[8] A matter admitted in response to an RFA is "conclusively established against the party making the admission" unless by noticed motion the party obtains leave of court to withdraw or amend the response. (Code Civ. Proc., § 2033, subds. (m), (n).)

Here, there is no dispute that Redwood Empire never sought leave to amend or withdraw its response to the RFA in issue. Dean urges that Redwood Empire's failure to do so should have precluded it from introducing any evidence of pre-1972 recreational use of the road. The premise underlying Dean's argument is that Redwood Empire had a duty to amend or withdraw the response to the RFA upon obtaining evidence of such use. We disagree with that premise.

Nothing in the text of the statute creates any ongoing duty to update responses. Indeed, the statute authorizes amending or withdrawing a response only where a court finds the original admission "was the result of mistake, inadvertence, or excusable neglect." (Code Civ. Proc., § 2033, subd. (m).) Redwood Empire would not have met that standard here because there was nothing mistaken, inadvertent, or neglectful about the original response. The RFA asked Redwood Empire to admit that it did not "have" the evidence in issue. When Redwood Empire verified and served its response to that present tense question in April of 1997, it gave the answer that was true at the time. It was still true at the time of trial (and it will always be true) that in April of 1997 Redwood Empire had no evidence of pre-1972 recreational use of the road. Thus, there was neither a need nor even an applicable mechanism for Redwood Empire to amend or withdraw its response to the RFA in question.

As noted, the trial court relied on *Fredericks v. Kontos Industries, Inc., supra,* 189 Cal.App.3d 272, in denying Dean's motion. That reliance was appropriate. In *Fredericks,* a party responded to an RFA by admitting he had agreed to make contractual payments pursuant to a certain payment schedule. (*Id.* at p. 276.) The appellate court held that the trial court nevertheless could properly find that the party's agreement was contingent on certain work taking place first. (*Id.* at p. 277.) The court explained: "Although

---

[8]Without citation to the record, Redwood Empire asserts that Dean served the set of RFA's containing the one in issue prior to any other discovery having taken place. If that is true, the use of the RFA's was questionable under Witkin's description of their intended purpose.

admissions are dispositive in most cases, a trial court retains discretion to determine their scope and effect. An admission of a fact may be misleading. In those cases in which the court determines that an admission may be susceptible of different meanings, the court must use its discretion to determine the scope and effect of the admission so that it accurately reflects what facts are admitted in the light of other evidence." (*Ibid.*)

Here, although the RFA and admission were not ambiguous in precisely the same way as those in issue in *Fredericks*, the trial court was still faced with a situation where it needed to determine the "scope and effect" of the admission. The court properly found that the admission was limited to Redwood Empire's knowledge as of the time the admission was made; it was not some sort of promise that Redwood Empire would not locate evidence in the future.[9] As the *Fredericks* court pointed out, it is important that an RFA not become "a device to hide or confuse issues." (*Frederichs v. Kontos Industries, Inc., supra,* 189 Cal.App.3d at p. 278.)

Notwithstanding our conclusion, we do not fault Dean for feeling "sandbagged." She had, she thought, eliminated an issue from the case, only to have it reappear much closer to trial. While the problem only appeared in hindsight, it is a consequence of the choice to use an RFA regarding a matter of a party's present knowledge, rather than the more typical RFA, which addresses a matter of historical fact. With this case as a cautionary tale, we suspect practitioners can devise methods to avoid similar situations in the future.[10]

As to what happened here, we agree with the trial court that there was no real prejudice to Dean. She learned the evidence existed several weeks before trial. There is no indication in the record that she sought but was denied any needed continuance to prepare for trial or to take additional discovery.[11]

[9]We note that the statute governing interrogatories expressly forbids propounding a "continuing" interrogatory that imposes on the responding party "a duty to supplement an answer to it that was initially correct and complete with later acquired information." (Code Civ. Proc., § 2030 subd. (c) (7).) We suspect there is no parallel provision in section 2033 because the Legislature did not anticipate RFA's like the one at issue here. We express no opinion as to whether the absence of a similar provision in section 2033 would permit a continuing RFA. The fact that the RFA in issue did not purport to be a continuing RFA, however, is a further reason Redwood Empire had no duty to update its response.

[10]With the benefit of hindsight, we also note that Redwood Empire could have qualified its admission with a statement to the effect that although it did not then possess the information in issue, it believed such evidence might be found prior to trial. Nothing in the record, however, demonstrates any intent to mislead on the part of Redwood Empire.

[11]Redwood Empire also argues that even if the court erred in denying Dean's motion in limine and permitting Nelson to testify, there is no prejudice because Metzger and Cornick's

## B. *The Dedication*

■ An implied dedication may arise when "the public has used the land 'for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone.' " (*Gion v. City of Santa Cruz* (1970) 2 Cal.3d 29, 38 [84 Cal.Rptr. 162, 465 P.2d 50].)[12] The public usage must have been by "various groups of persons" not a "limited and definable number of persons." (*Gion*, at p. 39.)

■ As noted, Redwood Empire contends that once the roadway was dedicated to the public, then it could be used for any transportation purpose, subject only to any applicable general laws or ordinances.[13] Dean argues that an implied public dedication is analogous to a prescriptive easement, and that therefore the public's rights are limited to those consistent with the types of public usage upon which the implied dedication was based. Dean cites, and we have uncovered, no authority expressly addressing this precise issue.

■ For convenience, to this point we have spoken of an implied dedication of the road. More precisely, prior to 1972 adverse public use of a road for more than five years generally gave rise to an implied dedication of a public easement to use the road. (See *Friends of the Trails v. Blasius, supra*, 78 Cal.App.4th at pp. 820-822 [surveying doctrine of implied dedication "on which the claim of a public easement is predicated."]; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 121, pp. 337-338.) ■ Indeed, although the trial court did not use the term "easement" here, it specifically stated that "[n]othing in this decision changes or affects the ownership of

testimony was sufficient to support the court's finding and Dean did not object to that testimony. We agree with Dean that she did not need to object specifically to Cornick's testimony, as her motion had already been denied at that point. Her failure to object to Metzger's testimony, however, precludes her from now complaining of its admission. We do not find that dispositive, though, because had Metzger's testimony been the *only* evidence of pre-1972 public use, the trial court might have concluded there was insufficient use to give rise to a dedication.

[12]The previously mentioned enactment of Civil Code section 1009 and amendments to Civil Code section 813 were a Legislative reaction to *Gion* and largely abrogated its holding. (*Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, 823 [93 Cal.Rptr.2d 193].) Again, though, those changes operated prospectively only. (*Ibid.*)

[13]At oral argument Redwood Empire stressed the argument that the CDF has approved a timber harvesting plan (THP) that calls for use of Summit Road. Redwood Empire contends that as long as the CDF finds use of the road proper, then it is. Attached to the THP, however, is a letter from Redwood Empire's forester predating approval of the THP and assuring the CDF that "Summit Road is not under the jurisdiction of Forest Practice Regulation. Whether . . . Summit Road is public or private is a civil matter." It is therefore plain that the subsequent approval of the THP cannot be construed as a finding that Redwood Empire has a right to use the disputed portion of the road.

property adjacent to and/or beneath the Road." Thus, the effect of the court's order was only to declare a public easement, not public ownership of the road.

▮ By definition, "[a]n easement is an *interest in the land* of another, which entitles the owner of the easement to a *limited use or enjoyment* of the other's land." (4 Witkin, Summary of Cal. Law, *supra*, Real Property § 434, p. 614, italics in original.) ▮ The issue, therefore, is what limits, if any, should there be on the public's use of the road in issue here. Had this been a *private* easement arising by prescription, the use during the prescriptive period would govern the scope of the easement. "It is settled law that 'the scope of a prescriptive easement is determined by the use through which it is acquired. A person using the land of another for the prescriptive period may acquire the right to continue such use, but does not acquire the right to make other uses of it [Citations.]' " (*Connolly v. McDermott* (1984) 162 Cal.App.3d 973, 977 [208 Cal.Rptr. 796], quoting *Hannah v. Pogue* (1944) 23 Cal.2d 849 [147 P.2d 572]; see also Civ. Code, § 806 ["The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired."].) We see no reason the same rule should not apply to a public easement that has arisen through implied dedication.

Redwood Empire points to language in *Gion* cautioning that in implied dedication cases, "analogies from the law of adverse possession and easement by prescriptive rights can be misleading." (*Gion v. City of Santa Cruz, supra,* 2 Cal.3d at p. 39.) The *Gion* court, however, was only discussing the element of adverse use, which differs in dedication cases because use under "a personal claim of right need not be shown." (*Ibid.*) When it comes to the issue of whether an impliedly dedicated public easement should be limited to the use that gave rise to it, prescriptive easements appear fully analogous. (See *Jones v. Deeter* (1984) 152 Cal.App.3d 798, 802 [199 Cal.Rptr. 825] ["A dedication is legally equivalent to the granting of an easement."].) We conclude, therefore, that the scope of the easement remains in issue. (See *Friends of the Trails v. Blasius, supra,* 78 Cal.App.4th at p. 819 [describing trial court's judgment, which listed permissible uses of the trail at issue].)[14]

It is true, of course, that increased usage of a prescriptive easement is sometimes permissible. (*Hill v. Allan* (1968) 259 Cal.App.2d 470, 484 [66

---

[14]Apart from contending that evidence of the pre-1972 recreational use should not have been admitted at all, Dean makes no real argument that the evidence is insufficient to support the finding of a public dedication. Dean merely argues the evidence is insufficient to support a dedication "for logging purposes." Dean also argues that there was no dedication because the public use was permissive under the licenses between the original landowners and the CDF. We disagree. Although the road was constructed and used by CDF pursuant to those licenses, the licenses did not authorize recreational use by the general public. (Cf. *Friends of the Trails v. Blasius, supra,* 78 Cal.App.4th at pp. 826-827 [rejecting arguments that an

Cal.Rptr. 676].) Redwood Empire urges that even if we look to the rules applicable to prescriptive easements, we should affirm because the evidence would support a finding that its logging activities were a foreseeable development that do not overburden the easement. The trial court made no such finding, however, so the question is not properly before us. We must remand to give the trial court the opportunity to make the initial determination as to whether Redwood Empire's logging operations are within the scope of the public easement.

Notwithstanding our conclusion that it was premature to deny Dean injunctive relief without determining the scope of the public easement, we do not believe the trial court abused its discretion by enjoining Dean from interfering with respondents' use of the road. This is a dispute that should be resolved cooperatively or in the courts, and not through unilateral physical action at the site.[15]

## DISPOSITION

The injunction entered against appellants is affirmed. The denial of injunctive relief in favor of appellants is reversed, and the matter is remanded for further proceedings consistent with this opinion. The parties shall bear their respective costs on appeal.

Premo, J., and Elia, J., concurred.

---

express written easement granted to public agency precluded implied dedication of public easement from recreational use].)

[15]Dean's additional complaint that the injunction is overbroad is without merit.