Filed 11/8/22 Honetschlager v. Kozeychuk

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL HONETSCHLAGER, individually and as Trustee, etc., et al., Cross-defendants and Respondents, v. ULIANA KOZEYCHUK, Cross-complainant and Appellant. | G060530 (Super. Ct. No. 30-2018-00999614) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Charles Margines, Judge. Affirmed.

Uliana Kozeychuk, in pro. per., for Cross-complainant and Appellant.

Klein & Wilson, Michael S. LeBoff and Brian M. Kelly for Cross-defendants and Respondents.

# INTRODUCTION

We have heard it said on more than one occasion: business and friendship don't mix. A fortiori, business and love are problematic. This case is a paradigm of that proposition.

The parties in this appeal were formerly involved in a long-term relationship. Honetschlager started a company early in the couple's relationship which later became quite successful. Kozeychuk, his ex-girlfriend, says he told her from the beginning she would own a one-third share of the business if she put in time and effort contributing various services to the company. She never insisted he put this in writing and never invoiced him for the services she performed. Apparently, she did without such formalities because they were in a relationship and she trusted him.

This turned out to be a costly abjuration. Because once the couple parted ways, Honetschlager denied she had any interest in the company and refused to pay her anything for her contributions. The dispute ended up in Orange County Superior Court and went to a jury trial, where a verdict was handed down in favor of Honetschlager. Kozeychuk now appeals, and we conclude we must affirm.

# FACTS

Appellant Uliana Kozeychuk and respondent Michael Honetschlager were in a somewhat fitful romantic relationship for eight years, beginning in 2010 and ending in May of 2018.[1] Kozeychuk is a practicing attorney, and Honetschlager is in the commercial painting industry.

Sometime around 2008, before he and Kozeychuk got together, Honetschlager decided to start his own painting business as a sole proprietorship. Shortly

---

[1] The couple broke up and got back together some four times before their final break up in May 2018. All break ups were at Kozeychuk's behest. The couple never married, although they were engaged at one point.

after he began dating Kozeychuk, in 2010, he incorporated the business as respondent MGH Painting, Inc. (MGH). Honetschlager held 100 percent of the company's shares.

Throughout their relationship, Kozeychuk assisted and advised Honetschlager and MGH on various aspects of the business. The assistance she provided ranged in complexity. For example, she performed ministerial tasks, such as printing employee paychecks. She assisted Honetschlager with bids for a few jobs. She ran interference on issues that arose with MGH's 401(k) plan and with its bank. She also provided legal services from time to time, such as reviewing contracts and preparing a severance agreement.

The problem was Kozeychuk did not keep records of the work she performed, nor did she bill the company or Honetschlager contemporaneously for her time. According to Kozeychuk, she did not expect to be paid in the traditional sense, but rather in what is commonly known as "sweat equity" – labor in exchange for an ownership stake in the business. She testified she and Honetschlager had discussed the prospect of her becoming a stakeholder, even going so far as to discuss what percentage each would hold.[2] She had asked for 50 percent ownership, but he had insisted she could only have a one-third ownership stake because he had two children to whom he intended to bequeath the business upon his demise. Based on this conversation, Kozeychuk testified, she invested time and energy assisting with various tasks that came up.

Despite her perceived understanding, however, Kozeychuk had no signed agreement regarding the terms of her relationship with MGH. She never obtained share certificates and never memorialized her understanding in writing. She claimed she did not force the issue because she did not want to upset Honetschlager or indicate she did not trust him.

---

[2] According to her, this conversation took place shortly after Honetschlager's original business partner, Kevin Francois, was arrested and imprisoned. In the wake of the arrest, Honetschlager asked Kozeychuk if she would like to become his business partner. A corporate document entered into evidence shows Kozeychuk was made a director of MGH along with Honetschlager on July 2, 2010.

In November 2011, Kozeychuk filed for personal bankruptcy. However, she failed to schedule either her purported interest in MGH or any alternative claim for services rendered to the company in the bankruptcy paperwork.[3] The bankruptcy was discharged in February 2012.

In May of 2018, Kozeychuk and Honetschlager broke up for the fifth and final time. Just prior to their break up, Kozeychuk said, Honetschlager had indicated he intended to sell MGH and keep all sale proceeds without sharing them with Kozeychuk. This conversation apparently took place at a Costa Mesa steakhouse. Kozeychuk abruptly left the restaurant and terminated the relationship.

On May 7, 2018, Kozeychuk sent an e-mail to the brokerage firm Honetschlager was using to find a buyer and informed the staff she was a part owner of the business and expected to have approval authority on the transaction, as well as a cut of the proceeds. This scuttled any possibility Honetschlager might have had to line up a buyer for MGH. So in June 2018, he filed a complaint against Kozeychuk, seeking a declaratory judgment that he, and he alone, was the rightful owner of MGH.

Kozeychuk saw this as a shot across the bow. She decided to file a cross-complaint against both Honetschlager and MGH alleging breach of oral partnership agreement, promissory fraud, quantum meruit, promissory estoppel, and declaratory relief in August of 2018.

The following year, Kozeychuk informed the United States Bankruptcy Trustee about the litigation and her claims against Honetschlager and MGH. The bankruptcy court reopened the bankruptcy estate and appointed a trustee. In or around February 2020, an auction was scheduled to sell off Kozeychuk's interest and claims, and MGH was the highest bidder. It paid $57,000.

---

[3] At trial, she testified she failed to schedule it because she had no writing confirming her interest, and she had forgotten about it because of how distraught she was at the time.

As a result, Kozeychuk divided her quantum meruit claim into two separate claims – one for services rendered prior to bankruptcy and one for services rendered after. Honetschlager received judgment on his claim for declaratory relief. And he and MGH filed a motion for summary adjudication as to all of Kozeychuk's claims, save her quantum meruit claim for services rendered after bankruptcy. They argued Kozeychuk lacked standing to assert claims belonging to her bankruptcy estate or now, to MGH. This motion was granted, and Kozeychuk was left to go to trial with just the postpetition quantum meruit claim. The jury hearing the claim found for Honetschlager and MGH.

## DISCUSSION

Kozeychuk makes several arguments on appeal. First, she contends there was insufficient evidence to support the verdict in favor of the respondents. Second, she believes the trial court abused its discretion in denying several of her motions in limine, which permitted prejudicial evidence to come in. Third, she claims the trial court erroneously used respondents' proposed verdict form. And finally, she argues it was error for the trial court to summarily adjudicate the bulk of her claims. None of these arguments have merit.

**I.  Verdict Not Supported By the Evidence**

Kozeychuk argues the jury's verdict in her former boyfriend's favor was not supported by substantial evidence, but this is a misstatement of the applicable legal standard.

"'We generally apply the familiar substantial evidence test when the sufficiency of the evidence is at issue on appeal. Under this test, "'we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . "In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing*." [Citation.] All conflicts, therefore, must be resolved in favor of the respondent.'" [Citation.] [¶] 'But this test is typically implicated

5

when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case [citations]. [¶] 'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."' [Citation]." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465-466.)

The above standard applies to this case because the jury's verdict rested on a failure of proof. The jury explicitly determined Kozeychuk had failed to prove every element of her quantum meruit claim.[4]

"'Quantum meruit refers to the well-established principle that "the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made" [citations].' (*Huskinson & Brown v.*

_____

[4] Even if we were examining whether substantial evidence supported the jury's verdict, we would find Kozeychuk waived the issue by failing to summarize and analyze in her brief all of the evidence, both favorable and unfavorable to her position. (See *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) Kozeychuk's statement of facts was barebones and one-sided.

6

*Wolf* (2004) 32 Cal.4th 453, 458.) The requisite elements of quantum meruit are (1) the plaintiff acted pursuant to 'an explicit or implicit request for the services' by the defendant, and (2) the services conferred a benefit on the defendant. (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 249.)" (*Port Medical Wellness, Inc. v. Connecticut General Life Ins. Co.* (2018) 24 Cal.App.5th 153, 180.)

The evidence does not compel a finding in Kozeychuk's favor as a matter of law on her quantum meruit claim. Indeed, the evidence – even when viewed from Kozeychuk's perspective[5] – lays out a very simple picture. Kozeychuk expected to obtain a stake in MGH if she helped Honetschlager with the business. She did not have an expectation of being paid in wages or salary for her services, but rather in equity. It is undisputed that MGH purchased said equity in the business in 2020. It was reasonable for the jury to conclude Kozeychuk's work for MGH had been compensated through the purchase of her purported equity.

Kozeychuk's case at trial, and before us, places great weight on responses given by MGH to several requests for admission (RFA's) during the discovery process. In these responses, MGH admitted Kozeychuk had performed services for its benefit and it had not paid her. But whatever these RFA responses prove, they do not overshadow or eviscerate the impact of the $57,000 paid by MGH for her interest in the business.[6]

Kozeychuk believes the $57,000 represented payment only for her stake in the company as well as any wages due as of the date she filed bankruptcy. But again, her own testimony shows she expected to be compensated in equity and not in wages. The only real question for the jury to resolve, then, was whether the $57,000 paid to her

---

[5] We say this because Honetschlager steadfastly denied he promised Kozeychuk a stake in the business.

[6] We note the discovery responses were dated about a year prior to the purchase, at a time when respondents had given Kozeychuk nothing at all in exchange for her labor. We imagine they might have answered differently after the purchase.

7

bankruptcy estate was adequate to make Kozeychuk whole. We cannot say it was unreasonable for the jury to conclude it was.

At oral argument, Kozeychuk stressed that her quantum meruit claim was an alternative theory of recovery such that she was still due the reasonable value of her services even if she conceded she no longer had a claim to an equity stake. But we are leery of giving Kozeychuk a double recovery here. As we've stated, Kozeychuk's bankruptcy estate *was* compensated for her claimed equity stake. So the jury could reasonably have concluded this eliminated the need for any alternative theory of recovery. Even if we were to accept Kozeychuk's framing of the issue, we still do not see a basis to reverse the verdict. Kozeychuk was given an opportunity to present evidence of her damages, and the evidence she presented was largely speculative. At best, Kozeychuk could merely opine about the amount of time she spent on tasks and what tasks she performed. She had little documentation of her work. Because she gave the jury so little proof of damages, it was not unreasonable for the jury to find she had not proven damages.

## II.        Evidentiary Rulings

Kozeychuk's second line of attack is the trial court's rulings on two motions in limine, both of which we review for abuse of discretion. (See *Condon-Johnson & Associates, Inc. v. Sacramento Municipal Utility Dist.* (2007) 149 Cal.App.4th 1384, 1392.) Even if we find such error, we may not reverse the judgment unless we conclude it "resulted in a miscarriage of justice." (Evid. Code, § 353, subd. (b).) There was no error.

### A.        Motion in Limine No. 4 - Conclusiveness of RFA's

Kozeychuk asked the trial court to bar Honetschlager and MGH from presenting any evidence on the matter in the admitted RFA's discussed previously. The admitted RFA's asked (1) whether respondents asked Kozeychuk to perform services, (2) whether she performed services, (3) whether the services conferred a benefit on MGH,

8

and (4) whether MGH paid her for the services. The RFA's tracked the language of CACI No. 371, which lists four elements of quantum meruit[7]. During pre-trial motions, Kozeychuk argued MGH had admitted the first three elements of the claim through its RFA responses, and should be barred from introducing evidence refuting or negating the elements it admitted.

The trial court denied the motion, finding the RFA's themselves were very broad in their language. It did not feel the admissions could be reasonably read to preclude the defendants from being able to dispute specific services Kozeychuk provided. Kozeychuk contends the trial court, in effect, impermissibly rewrote her RFA's.

We disagree. "Although admissions are dispositive in most cases, a trial court retains discretion *to determine their scope and effect*. An admission of a fact may be misleading. In those cases in which the court determines that an admission may be susceptible of different meanings, the court must use its discretion to determine the scope and effect of the admission so that it accurately reflects what facts are admitted in the light of other evidence." (*Fredericks v. Kontos Industries, Inc.* (1987) 189 Cal.App.3d 272, 277, italics added.) This is exactly what the trial court did. The RFA's were very broadly worded, and, in our estimation, quite unhelpfully so. Because Kozeychuk was trying to prove she had rendered services over a years-long period, Honetschlager's

---

[7] CACI No. 371 states:

"371 Common Count: Goods and Services Rendered

"[Name of plaintiff] claims that [name of defendant] owes [him/her/nonbinary pronoun/it] money for [goods delivered/services rendered]. To establish this claim, [name of plaintiff] must prove all of the following:

"1. That [name of defendant] requested, by words or conduct, that [name of plaintiff] [perform services/deliver goods] for the benefit of [name of defendant];

"2. That [name of plaintiff] [performed the services/delivered the goods] as requested;

"3. That [name of defendant] has not paid [name of plaintiff] for the [services/goods]; and

"4. The reasonable value of the [goods/services] that were provided."

9

admission that she had indeed performed services did not necessarily mean he thought she had performed *all* services she was claiming at trial.

### B.         Motion in Limine No. 2 - Kozeychuk's Bankruptcy

Next, Kozeychuk appeals the trial court's decision to deny her motion in limine seeking exclusion of any reference to her bankruptcy case. She argued it was more prejudicial than probative because the only claim being tried was the quantum meruit claim for services rendered *after* her bankruptcy was filed. Honetschlager and MGH's counsel argued her statements before the bankruptcy court in 2011 were directly relevant. Kozeychuk's failure to schedule her interest in MGH in 2011, they argued, was relevant for the jury to be able to assess the credibility of her claims. The trial court agreed, and so do we. It was *highly* relevant. The jury was entitled to know this information in order to decide whether Kozeychuk's testimony should be believed.

Kozeychuk argues such evidence was being used to attack her character on grounds outside honesty or veracity. Her concern was the jury was essentially being told she was a bad person because she filed bankruptcy. This is simply not the case. Evidence of her bankruptcy was not introduced to impugn her character as such. It was being introduced to show her claim at trial was inconsistent with a previous statement she made in front of the bankruptcy court. The jury was surely entitled to know this.

### III.         Verdict Form

Next, Kozeychuk argues she was prejudiced by the trial court's choice of Honetschlager's verdict form over hers. Kozeychuk proposed a verdict form which would have required the jury to answer "yes" or "no" to questions targeting each specific element of her claim. Honetschlager and MGH proposed a verdict form which lumped the elements together and simply asked the jury to answer "yes" or "no" as to whether Kozeychuk had proven "all of the elements of her claim for services rendered[.]" The trial court preferred the latter form.

Kozeychuk believes the respondents' verdict form was designed to confuse the jurors because it did not mention what "all of the elements" of the claim were. In our view – and apparently in the trial court's – she underestimates the jury. The trial court said it would instruct the jury on CACI No. 371 and provide the instructions to the jury when they went to deliberate. It did so. If they didn't understand them when read, the jury was more than capable of finding the instruction providing the elements of the claim and determining whether those elements had been proven.

In any event, Kozeychuk herself ensured the jurors would not be confused on the elements of her claim because she took time in her closing to guide the jury to CACI No. 371 and discuss the elements. We are satisfied the jury was properly instructed and well aware of the elements required.

**IV.          Summary Adjudication of Other Claims**

Finally, Kozeychuk claims the trial court erred when it granted Honetschlager and MGH's motion for summary adjudication of four of her six claims – breach of oral partnership agreement, promissory fraud, promissory estoppel, and declaratory judgment.[8] Honetschlager and MGH's motion contended Kozeychuk lacked standing to bring the bulk of her claims because they all belonged to her bankruptcy estate, and later passed to MGH. We agree.

Kozeychuk's bankruptcy estate included all of her "legal and equitable interests" at the time of the Chapter 11 filing in November 2011. (See 11 U.S.C. § 541, subd. (a).) Neither side disputes this would have included any current or expected future interest she might have had in MGH, which disposes of her declaratory relief claim. The bankruptcy estate also would have included Kozeychuk's prepetition causes of action. (See *Smith v. Arthur Andersen LLP* (9th Cir. 2005) 421 F.3d 989, 1002.)

---

[8]          Kozeychuk apparently does not challenge the summary adjudication of her prepetition quantum meruit claim.

11

Kozeychuk's first cause of action for breach of oral partnership agreement alleged she and Honetschlager agreed she would own one-third of MGH and perform services in exchange. She further alleged Honetschlager breached the agreement in May 2018 when he refused to buy her out of her share. Kozeychuk correctly argues that a breach of contract claim does not come into existence until the breach occurs. And her cross-complaint alleged the breach did not occur until May 2018. Nevertheless, at the time of the alleged breach, Kozeychuk owned no interest in MGH. By that time, any contractual benefit related to her interest in MGH had passed to the bankruptcy estate. She could not have sustained an injury.

Summary adjudication was similarly proper as to Kozeychuk's promissory estoppel claim, which hews closely to her breach of contract claim. The promissory estoppel cause of action, too, would have accrued in May 2018, based on the statute of limitations analysis applicable to breach of an oral contract. (See *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1224, fn. 5 (*Newport Harbor*).) "The elements of promissory estoppel are (1) a promise, (2) the promisor should reasonably expect the promise to induce action or forbearance on the part of the promisee or a third person, (3) the promise induces action or forbearance by the promisee or a third person, and (4) injustice can be avoided only by enforcement of the promise." (*Id.* at p. 1225.) By the time Kozeychuk was arguably entitled to enforcement of Honetschlager's promise, she no longer had standing to assert an ownership interest in MGH because the interest belonged to the bankruptcy estate. Again, she had suffered no injury.

Kozeychuk's promissory fraud claim also belonged to her bankruptcy estate. A claim for promissory fraud requires a promise made without intention of performing it. (See *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.) The breach occurred prepetition; the moment Honetschlager allegedly promised Kozeychuk an ownership stake in MGH in 2010.

12

Kozeychuk argues she still maintained standing as to claims arising after her bankruptcy petition was filed, because she believes her lawsuit encompasses continuing wrongs, each of which represents a separate claim. This argument misses the mark. It is irrelevant whether Honetschlager engaged in multiple breaches of the same agreement, as Kozeychuk claims in her briefing. Kozeychuk's interest in MGH passed to her bankruptcy estate in 2011 and any claims associated with it no longer belonged to her – even if the breaches took place after her petition. In sum, we find no error in the trial court's grant of summary adjudication as to the above claims.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOORE, J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13