Filed 8/30/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JORGE PEREZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HIBACHI BUFFET,<br><br>    Defendant and Respondent. | B304824<br><br>Los Angeles County<br>Super. Ct. No. BC659957 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly E. Kendig, Judge. Reversed and remanded.

Kramer Trial Lawyers, Daniel K. Kramer, Teresa A. Johnson; Esner, Chang & Boyer, Stuart B. Esner and Kevin K. Nguyen for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Don Willenburg; Miller Law Associates, Frank T. Sabaitis and Jeanette Chu for Defendant and Respondent.

_____

Wet tile at Hibachi Buffet caused Jorge Perez to slip and hit the floor hard.  The jury awarded damages, but the court granted Buffet's two posttrial motions.  One was for judgment notwithstanding the verdict.  The other, in the alternative, was for a new trial.  Identical logic propelled both motions.  Buffet said no evidence showed its employees spilled liquid on its floor, so blaming them was impermissibly speculative.  Perez, however, said the pattern of the spill, in context, supported a reasonable inference it must have come from an employee, for how else would a spattered 10-foot trail of liquid 10 inches wide end up in the hallway to the kitchen?

We reverse both orders and reinstate the jury verdict.  Perez offered a reasonable explanation for how the tile got wet, one consistent with the company's admission about its use of the hallway:  a Buffet employee taking dirty dishes to the kitchen spilled liquid on the way.  By contrast, Buffet's explanations made no sense.

Spilling liquid on the floor is an everyday event.  When the facts are this simple and the contest is between a reasonable explanation and no reasonable explanation, the reasonable explanation wins.

I

Hibachi Buffet could seat 200 customers.  Its employees took dirty dishes from the dining area to the kitchen for washing.  Buffet's three-level dish cart could carry tubs and buckets.  The record contains a picture of a dish cart, although here it is not in the hallway where Perez fell.  (See appendix A., *post*, p. 15.)

On the top level there could be a tray for drinking cups.  Cups would contain whatever liquid customers left in them when Buffet employees cleared dirty dishes from tables.

2

On the day of the incident, Perez left his lunch table and walked down a hallway to a restroom. The hallway was three to four feet wide and led past the restrooms to the kitchen. Perez noticed no moisture on the floor. He was in the restroom for 45 or 60 seconds adjusting his dentures. Then he left, stepped into the hallway, slipped, and fell. The flooring was tile and liquid had made it slippery.

Everyone agrees the hallway floor was wet when Perez left the restroom. Perez assumed it was water: it was clear and had no odor. Others saw and photographed the liquid and Buffet admits the liquid was there, but the parties do not agree *how* it got there.

Perez's friend took a video of the liquid after Perez fell. This two-minute video is in the record. A frame of that video appears in appendix B, *post*, page 16.

The video clarifies what this one frame does not. At the top is the fallen and injured Perez. Someone else's foot is on the white cloth, mopping up the liquid after Perez's fall.

Perez contended the liquid in this picture must have come from a Buffet worker bringing dirty dishes through the hallway from the dining area to the kitchen at the end of the hallway. Perez testified the liquid was in a trail eight to 10 feet long and ranged to 10 inches wide.

Of significance, the liquid's path extended past the restrooms in the hallway in both directions; the path did not emerge from or enter a restroom.

A discovery admission concerned this hallway. Perez put into evidence Buffet's admission that its employees used this hallway to transport dishware from the dining area to the kitchen.

We quote this admission. " 'Admit that during business hours your employees transport dishware from the main dining room of the subject premises to the kitchen using the subject hallway.' Again, 'subject hallway' is the hallway where the incident occurred. 'Subject incident' is the slip and fall that happened. The answer is—from the restaurant is 'admit.' "

Two Buffet witnesses, however, gave a different perspective. Both discounted the possibility the liquid came from a dish cart in the hallway where Perez fell.

Lanfang Wang was a Buffet manager who became a Buffet owner. She swore Buffet dishwashers did not use that hallway when their dish carts were full of dirty dishes. Wang claimed it was "impossible" for anyone to push a full cart through that hallway because it was very narrow. She said a different route to the kitchen was easier when the cart is full. Wang claimed she had never seen one of her employees push a cart with dirty dishes down the hallway where Perez fell. She also claimed she had never seen liquid leak from a dish cart to the floor. Wang declared such a leak was "impossible" because cups were always completely or nearly empty when workers picked them up from the dining tables.

Wang did agree Buffet employees used carts to move dishes. She likewise agreed the hallway where Perez fell goes from the dining area to the kitchen.

Buffet manager Charlie Qiang never saw dishwashers take dish carts down the restroom hallway where Perez fell. Instead, the carts went to the kitchen down a different hallway. Qiang had never seen liquid spill or drain from the dish carts.

To record incidents like customer falls, Buffet had six or seven security cameras inside the restaurant. Wang searched the

stored video and found the portion showing Perez. She claimed at trial she had seen nothing relevant on this tape: she testified she saw Perez only entering the hallway and that, after he entered, the camera angle did not allow a view of his fall.

Wang did not try to preserve this tape and said it may have been erased. Wang also testified she did not know whether there was a way to preserve the video footage and professed ignorance about whether the footage still existed and who would know if it did.

In short, Buffet invested in cameras to record falls like Perez's but claimed the tape of his fall was either missing or had been erased. Buffet never produced the video to Perez and the jury never saw it.

In limine, the trial court refused to give an instruction about spoliation of evidence, ruling that Perez had not established Buffet willfully destroyed the video. Perez does not challenge this ruling on appeal.

In closing argument, Perez's counsel told the jury the liquid trail came from a Buffet employee transporting liquids from the dining area to the kitchen. "How else could the liquid have gotten there? . . . There's no other explanation for it."

With reference to the missing videotape, Perez urged the jury to apply this instruction, which the court gave: "You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence." (CACI No. 203.)

Buffet's closing responded that there was no evidence about a leaking dish cart, so to ascribe the liquid to a spill by a Buffet employee would be improper speculation. To the jury, Buffet

offered other explanations of how the liquid got there. Buffet suggested, "[I]t could have been from that little girl. It could have been somebody who didn't make it to the restroom. It could have been a customer with a soda or—or a water. We don't know."

Buffet did not explain about "that little girl."

The jury awarded Perez $850,000 in damages.

After this verdict, Buffet moved for a new trial and, in the alternative, for judgment notwithstanding the verdict.

The court granted both motions.

On the motion for a new trial, the court wrote no evidence showed Buffet's employees "created or deposited the liquid on the floor that caused Plaintiff to slip. There was no evidence as to what the liquid was, no evidence when or how the liquid was deposited on the floor, no evidence which proved that liquid ever dripped from the carts of dirty dishes, and no evidence that an employee pushed a cart full of dirty dishes down the hallway leading from the dining room to the restroom on the day of the incident. There was also no evidence at trial that the carts spilled liquid. [¶] Indeed, the evidence established that there was a separate hallway to the kitchen for the carts of dishes. Ms. Wang testified that it did not make sense that an employee would go down the hallway to the restroom to get to the kitchen, because it involves a narrow hallway and 'that would take more energy and force for the employee to push that cart. And it would take longer for them to get to the kitchen.' [Citation omitted.] [¶] There was no evidence presented at trial that carts went down that specific hallway on the day of the incident with cups and dirty dishes. There was no testimony from any witness that

6

Defendant's dishwasher pushed a cart down the hallway on the day of the incident."

The trial court noted valid inferences must be based on the evidence presented at trial, and wrote that no evidence at trial supported the inference that a Buffet employee spilled the liquid. The court rejected inferences to be drawn from the spill pattern itself. "Although Plaintiff asserts that the trail of liquid 'exactly mimics the path taken by a [Buffet] employee pushing a cart in or out of the (restroom) hallway,' there is no foundation in any evidence presented at trial. There was absolutely no evidence presented at trial regarding what a typical spill pattern of liquid would have looked like if it had come from a cart. As a result, any such inference that the jury could have drawn that the trail of liquid 'exactly mimics the path taken by a [Buffet] employee pushing a cart in or out of the hallway,' was not a reasonable inference based on the evidence presented at trial. [¶] There was no evidence at trial that carts ever dripped liquid. And there was no evidence that carts dripped liquid on the day of the incident. . . . [I]t is not common knowledge that carts drip liquid when they traverse hallways and there was no evidence that carts 'often leave' liquid spills. In fact, there was no evidence at trial that carts ever dripped liquid."

The court did recite and credit Perez's testimony about his fall and his having seen the "trail of liquid" after he fell.

Ruling it was impermissible speculation to conclude a Buffet employee caused the spill, the court granted Buffet's motion for a new trial.

In a separate order the same day and in the alternative, the court also granted Buffet's motion for judgment notwithstanding the verdict. This ruling stated the court could

not weigh the evidence but rather had to view the record in the light most favorable to the party that had secured the verdict. The court analyzed the evidence in language substantially identical to its review in the motion for a new trial. It granted the motion on the ground that a different ruling would involve pure speculation.

In both analyses, the court omitted mention of Buffet's discovery admission that its employees use that hallway to transport dishware from the dining area to the kitchen. The court also omitted the fact the restaurant video was missing. The court did not discuss the plausibility of Buffet's trial explanations for the liquid.

Perez appealed both orders.

## II

We reverse both orders. Perez proved he slipped on a wet floor and gave a commonplace explanation for how the floor got wet: a Buffet employee spilled the liquid taking dishes to the kitchen for washing. The probable explanation was straightforward, logical, and supported by the evidence. The jury accepted Perez's reasonable explanation and rejected Buffet's less plausible alternatives. We reinstate the jury's verdict.

The parties agree about the governing law. If Buffet's employees acted within the scope of their employment, Buffet is liable for their negligent acts that create a dangerous condition on the property that caused injury. The employer cannot assert it had no knowledge of the dangerous condition. The law imputes the employee's negligence to the employer. (*Hatfield v. Levy Brothers* (1941) 18 Cal.2d 798, 806.) No one contends Buffet workers in this case acted outside of the scope of their employment.

8

More pertinent legal background concerns inferences. Given a trial record, what inferences are permissible? This is a question of law. We review it independently. (*Lopez v. City of Los Angeles* (2011) 196 Cal.App.4th 675, 684–685.) Logical inferences are permissible but speculation is not. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205–1206.)

A

We reverse the order for judgment notwithstanding the verdict. Viewed in a light favorable to the jury's decision, the verdict was sound. It was error to suppose otherwise and to grant judgment notwithstanding the verdict.

When considering such a motion, a trial court must view the evidence in the light most favorable to the party that won the verdict. This means disregarding conflicting evidence and drawing inferences in favor of the verdict. The court can grant the motion only if the evidence, in that light, offers no substantial support for the verdict. On appeal, the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion. (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 192.)

In the light favorable to the verdict, the evidence supported Perez's view of the case. He slipped in a restaurant hallway on a liquid trail that was 10 feet by 10 inches, in a wide spatter pattern. In discovery, Buffet admitted its staff used this hallway to take dishes from the dining area to the kitchen. The jury heard this discovery admission, which is binding and cannot be controverted. (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 30; see Code Civ. Proc., § 2033.410.) Workers used carts to bus tables and collected drinking cups containing liquid. The hallway's hard tile surface was slippery when wet. The liquid trail began

9

before the restrooms and continued past them. Perez's counsel argued to the jury that it was more likely than not that a restaurant employee spilled the liquid, which made the tile slippery and caused the fall.

Perez's analysis made sense. It required an inference, but the inference was logical. Everyone agreed a trail of liquid in fact was on the hallway floor. It got there somehow. Perez's suggestion fit common experience: more likely than not, it came from a restaurant employee who spilled liquid taking dirty dishes from the dining area to the kitchen.

Many events in human affairs are complex or beyond explanation. (See, e.g., *Bockrath v. Aldrich Chemical Co., Inc.* (1999) 21 Cal.4th 71, 79 ["complicated and possibly esoteric medical causation issues"].) Spilling liquid from dishes headed for the kitchen is not one. This matter was within the jury's experience and competence.

Buffet's contrary explanations made little sense. "It could have been from that little girl. It could have been somebody who didn't make it to the restroom. It could have been a customer with a soda or—or a water. We don't know."

The "little girl" explanation was baffling. Buffet did not explain it.

Buffet's suggestion that it was "somebody who didn't make it to the restroom" did not fit the facts. The liquid trail went past the restrooms and would not have come from someone rushing for a restroom. No testimony suggested the liquid smelled or looked like urine. At the lunch hour, it would be unusual for someone to create a 10-foot stream of urine down a restaurant's public hallway, past the restrooms, and heading for the kitchen or the

10

dining area.  Buffet's briefing does not address the difficulties with this theory.

Buffet's suggestion that it was a "customer with a soda or . . . a water" clashes with the spill pattern, which was linear, lengthy, and continuous.  The line of liquid went past the restrooms and extended towards the kitchen.  No evidence showed customers handled drinks in this area.

A careless Buffet employee remains the best explanation for the liquid on this hallway floor.  This analysis is common sense, which tort law incorporates.  (See *Dobbs v. City of Los Angeles* (2019) 41 Cal.App.5th 159, 162.)

When one explanation adds up and competing explanations do not, it is reasonable to accept the sensible explanation in a situation this simple.  That is logic, not speculation.

Buffet's appellate briefing leaves the origin of the liquid unexplained.  It omits the three explanations it gave the jury: the little girl, the person rushing to the restroom, and the customer with a soda.  Buffet's briefing implies the liquid in the hallway is inexplicable.  This stance, however, gives jurors too little credit for rationality and life experience.

Buffet argues it was "impossible" for a dish cart to go down the hallway where Perez fell because that hallway was too narrow and because a different hallway was a more direct route.  The trial court accepted the essence of Buffet's view.  In discovery, however, Buffet (assisted by its counsel) admitted its employees used this hallway to transport dishware from the dining room to the kitchen.  The jury heard this admission.  Buffet's appellate argument assumes the jury was required to believe the efforts of Wang, Buffet's manager, to qualify and "clarify" this admission.  The jury however was free to reject

11

Wang's testimony as self-interested, inconsistent, and unsupported by the missing video Wang viewed but did not preserve.  The testimony of Qiang suffered similar problems.

Buffet attempts to minimize its discovery admission, saying it admitted only that employees transported "dishware" in this hallway, not *dirty* dishware in a *dish cart*.  But jurors could infer the dishes that workers were bringing from the dining room to the kitchen would be, in the main, the *dirty* ones.  The *dish cart* is a logical inference from the admission, and in any event is not crucial to Perez's explanation, for everyone knows it is possible to carry dishes without a cart.  People do this all the time.

In sum, when viewing the evidence in a light favorable to the verdict, it was legal error to reject the verdict as impermissible speculation.  The jury was reasoning, not guessing.

B

We reverse the order granting Buffet a new trial.

A statute establishes and circumscribes the authority of trial courts to grant new trials.  (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 633.)  Code of Civil Procedure section 657 requires an order granting a new trial to specify not only the ground for the order but also "the court's reason or reasons for granting the new trial upon each ground stated."  Orders may not be affirmed on the ground of insufficiency of the evidence unless that ground is specified in the order.  (§ 657.)  "California courts have consistently required strict compliance with section 657."  (*Oakland*, at p. 634.)

It is an abuse of discretion to grant a new trial on the ground of insufficient evidence without mentioning a pertinent discovery admission.  Admissions are conclusive and not subject to being contested through contradictory evidence.  (*Stover v.*

12

*Bruntz, supra*, 12 Cal.App.5th at p. 30; see Code Civ. Proc., § 2033.410.) A court disparaging the evidentiary basis for a verdict must explain how its view squares with the conclusive and contrary power of this discovery device.

That explanation was missing here.

Buffet cites *Fredericks v. Kontos Industries, Inc.* (1987) 189 Cal.App.3d 272, 274, 276–279 to support the notion that, in certain cases, the trial court has discretion to determine the scope and effect of an admission. But the trial court's order did not attempt this effort.

There was prejudice. Buffet's admission put its employees in the hallway where Perez slipped, transporting dishes from the dining area to the kitchen. Buffet's witness testified the dishes included cups containing the liquid customers left in them. The trial court credited Perez with observing a "trail of liquid" down the hallway stretching eight to 10 feet. The video portrayed the spill's shape. Neither Buffet nor the trial court offered another plausible explanation. The verdict enjoyed reasonable evidentiary support.

13

## DISPOSITION

We reverse the orders, reinstate the verdict, award costs to appellant, and remand for further proceedings.


WILEY, J.

We concur:


GRIMES, Acting P. J.


HARUTUNIAN, J.*

---

*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

# APPENDIX A



AA - 3199 Exh. 255_0001

15

# APPENDIX B

