Filed 6/12/26  Jain v. Rothstein CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PRACHEE JAIN et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CARRIE BETH ROTHSTEIN,<br><br>Defendant and Respondent. | H052677<br>(Santa Clara County<br>Super. Ct. No. 20CV370518) |

In this medical malpractice case, plaintiff Prachee Jain was diagnosed with breast cancer, but not until it had already metastasized to her liver.  She and her husband, Tony Luong (together, "Plaintiffs"), brought this action against her obstetrician-gynecologist, Dr. Carrie Beth Rothstein, who did not initially identify the cancer during a breast examination and subsequent ultrasound while Jain was pregnant.  After a trial in 2024, a jury found no negligence by Rothstein, and the trial court denied Plaintiffs' motion for new trial and motion for judgment notwithstanding the verdict.

Plaintiffs now bring this appeal, arguing that the trial court erred in admitting evidence that they believe contradicted admissions made by Rothstein in discovery.  We conclude that the trial court did not abuse its discretion in allowing the jury to consider evidence that further explained Rothstein's admissions.  We affirm.

# I.     BACKGROUND

## A.     Facts

While Plaintiffs were expecting their first child, Jain went to see Rothstein with the complaint of a lump in her breast on June 12, 2019.  Rothstein agreed that she felt a "palpable lump" and ordered a "standard breast ultrasound."  Jain had the ultrasound on July 1, 2019, and the interpreting radiologist, Dr. Roberta Lisa Wong, wrote the following result: "There is no mass, cyst, or other abnormality identified."  Wong also wrote, somewhat contradictorily, that there was an "[i]ncidental finding of a 12 x 5 x 6 mm deep cyst."  But she stated that the cyst was "[b]enign" and of such a "small size" that it did not "explain [the patient's] larger general symptoms."

After receiving the ultrasound results, Rothstein "did not order a mammogram because [she] felt [she] had a benign finding."  She also did not order a biopsy or refer Jain to a cancer specialist.  Jain had at least two follow-up appointments with Rothstein in connection with her pregnancy in July 2019, where there was no record of any further discussion regarding the lump.  Jain gave birth to a baby boy on August 8, 2019.

On September 9, 2019, Jain arrived at Stanford Urgent Care with a complaint of abdominal pain; the hospital ran various tests, including blood tests.  On September 10, the hospital called her in for additional tests and then ultimately informed her that she had breast cancer.  It was "Stage 4" cancer, meaning that it had spread ("metastasized") to at least one other organ of the body.  By that time, the cancer had spread to Jain's liver, and she was later found to have tumors in her brain and bones, as well.

## B.     Procedural History

### 1.     Pretrial Discovery

Plaintiffs filed the present action against Rothstein and other defendants in 2020, and the case went to trial in June 2024 with Rothstein as the sole remaining defendant. Jain asserted a cause of action for medical negligence, and Luong asserted a cause of

action for loss of consortium. During pretrial discovery, Plaintiffs propounded various requests for admissions (RFAs) on Rothstein, including the following three:

"REQUEST FOR ADMISSION NO. 13:

Admit that on June 12, 2019, YOU felt Ms. Jain's left breast and agreed there was a lump….

"REQUEST FOR ADMISSION NO. 34:

Admit that YOU should have referred Ms. Jain to an oncologist in July 2019….

"REQUEST FOR ADMISSION NO. 35:

Admit that YOU should have referred Ms. Jain to an oncologist in August 2019."

Rothstein responded "Admit" to each of these RFAs.

Plaintiffs also propounded RFAs that focused on whether the breast cancer was already at Stage 4 in June or July 2019. In other words, these latter RFAs (Nos. 42-44) addressed the question of causation: whether Jain would have had a different course of treatment or a materially better prognosis if the cancer had been detected by Rothstein in June or July rather than by Stanford Urgent Care in September, or alternatively, whether the failure to detect the cancer in June/July was not a "substantial factor" in causing her harm. Rothstein admitted that the cancer "was not yet Stage 4" in June 2019 or July 2019 (RFAs Nos. 42 and 43), but she responded "Unknown" as to August 2019 (RFA No. 44).

### 2. Motions in Limine

On the eve of trial, the court held a hearing on the parties' motions in limine. One of Plaintiffs' motions (No. 1) sought to preclude Rothstein from presenting any evidence to contradict her responses to the causation RFAs. Specifically, Plaintiffs argued that because Rothstein had admitted that Jain's cancer was not yet at Stage 4 in June and July 2019, she should not be permitted to have her expert testify at trial—as he did at his

deposition—that the cancer was in fact already at Stage 4 by June 2019.  This motion made no mention of RFAs Nos. 13, 34, or 35.

Another of Plaintiffs' motions (No. 2) asked for an order overruling Rothstein's objections to Plaintiffs' RFAs, including both the causation RFAs and RFAs Nos. 34 and 35.  Each of Rothstein's objections to these RFAs were identical, stating that the RFAs were "vague, ambiguous, overbroad, … not reasonably calculated to [lead to] the discovery of admissible evidence," privileged, and designed to seek "premature expert witness testimony."  This motion also did not mention RFA No. 13.

At the hearing on June 7, 2024, the trial court stated that it would grant motion No. 2, finding Rothstein's objections to be "untimely" and "not proper"; and then there was limited additional discussion on the record as to that motion.  The parties and the court focused the majority of their discussions on motion No. 1, including whether it was excusable neglect or a "mistake" for Rothstein to have admitted some of these RFAs.  While the parties discussed the causation RFAs, the court also addressed RFAs Nos. 34 and 35 as part of motion No. 1, even though the written motion did not include these RFAs.  The court indicated that it would allow Rothstein to provide testimony to explain her admissions that she "should have" referred Jain to an oncologist in July and August 2019, based on Rothstein's counsel's explanation that Rothstein had answered these RFAs using her hindsight knowledge of Jain's cancer diagnosis.  According to her counsel: "[S]he's providing this information in the context of what it is that she knew and understood at the time and what her thought processes were at the time.  She was not disclosed as an expert."  The court determined that as a matter of fairness, "I think the doctor has a right to explain why she says this," and the court found there would be no prejudice to Plaintiffs, as Rothstein was not providing expert testimony.

As for RFAs Nos. 42-44 (and 45-47), the trial court ruled that Rothstein would be permitted to explain her admissions that the cancer was not yet at Stage 4 in June and

4

July 2019, but that her expert would *not* be permitted to contradict these admissions by opining that the cancer was already at Stage 4 in June 2019.

Neither the parties nor the court addressed RFA No. 13.

### 3. Trial

At trial, Rothstein's RFA responses were admitted into evidence, but she was also allowed to explain her responses to RFAs Nos. 13, 34, and 35. As to No. 13, Rothstein agreed she felt a "lump" on June 12, 2019, and that as a result, she put in an order for "a standard breast ultrasound." She further testified that based on the ultrasound results, she concluded that the lump was "benign" and not cancerous. According to Rothstein, "[a] lump is a complaint," not an evaluation or a diagnosis.

Rothstein's expert witness regarding the standard of care, Dr. Albert Phillips, testified that what Rothstein felt "was not necessarily a lump but more of a thickening." Phillips later repeated that "it wasn't a lump or cancer but more of a thickening," and the ultrasound confirmed that "there wasn't a mass there. There was just a thickening …." At no point did Phillips clarify what he meant by "lump," "mass," or "thickening," and at no point did the questioning attorneys ask him to define these terms or differentiate these concepts, on either direct examination or cross-examination. This led to a number of discussions in front of the jury where terms were not defined, such as the following exchange with Plaintiffs' counsel:

> "Q. The question is that – if a doctor feels a lump, that means she would have a high suspicion of cancer, correct?
>
> "A. No, I didn't say that. I said that if you have a specific – a lump is – as physicians, we can identify the types of lumps by physical exam. There'll be different characteristics. Is it fixed? Is it hard? Does the skin over it change? Those are the kinds of things that would put you in a higher suspicion this is a malignancy. But just finding a lump, could be a cyst, could be a host of things, not even cancer. I don't know. If you feel a lump, you got to figure it out.

5

I don't know what your question was.  If a doctor feels a lump – what's the question?

"Q.     So, Doctor, the question is, if a doctor feels a lump –

"A.     Let's qualify what you mean by "lump."

"Q.     No qualifications.  If a doctor feels a lump, does that mean that that doctor now has a high suspicion of cancer?

"A.     Not necessarily."

Plaintiffs' counsel did not object on the record to any of Phillips's testimony to the extent that it may have been inconsistent with RFA No. 13.

As for RFAs Nos. 34 and 35, Rothstein's responses were admitted into evidence, but she elaborated on what she meant by "should have referred," noting that her response was given in 2021 "when we all knew [Jain] had cancer."[1]  She also testified in her direct examination that "with the information I had at the time, there wouldn't be anything different I would do."

There was a significant amount of testimony at trial regarding causation—i.e., whether the failure to detect Jain's cancer by June or July 2019 was a "substantial factor" in causing harm to the Plaintiffs.  Consistent with the court's in limine ruling, Rothstein's causation expert refrained from opining that Jain's cancer was already at Stage 4 by June 2019.  But the jury did not reach the issue of causation, as it ultimately found no negligence in Rothstein's diagnosis and treatment of Jain.  Following the jury's verdict, the trial court signed a judgment in favor of Rothstein.

### 4.     Post-Trial Motions

Plaintiffs moved for a new trial and for a judgment notwithstanding the verdict (JNOV) in August 2024.  The primary basis for the new trial motion was that the court improperly admitted evidence that was "contrary" to the RFAs.  Plaintiffs' JNOV motion

---

[1] Rothstein mistakenly referred to the RFA response as a "deposition," but it is clear from the context of her testimony that she meant the written discovery response.

6

was based on largely overlapping arguments, including the notion that the RFAs "conclusively established" liability against Rothstein when combined with Plaintiffs' interpretation of the experts' testimony. According to Plaintiffs, Rothstein "admitted liability" when she admitted she felt a lump in Jain's breast, and she "conceded liability" when she admitted that she "should have" referred Jain to an oncologist in July 2019. Thus, liability was already established in Plaintiffs' favor, any contrary evidence should have been excluded, and at a minimum, the evidence was insufficient to support the jury's finding of no negligence. [2]

At a hearing in September 2024, the trial court was unmoved by these arguments. It described the trial testimony surrounding RFA No. 13 as "explanatory rather than contradictory," and it expressed the view that allowing Rothstein "to explain [RFA No. 34] was proper," because "the jury would have been left with the wrong impression if she was not allowed to explain her responses." The court acknowledged that some of its previously stated reasons at the pretrial hearing were "wrong" but concluded that it ultimately reached the right result: not allowing contrary evidence when RFA responses were "unequivocal admission[s]" but allowing "some explanatory information" when "they were equivocal." In denying the new trial motion, the court observed that "there was a lot of evidence to support" the idea that "Dr. Rothstein complied with the standard of care." And the court relied on this same rationale in denying the JNOV motion, finding substantial evidence to support the verdict.

Following the denial of the post-trial motions, Plaintiffs timely appealed.

## II. DISCUSSION

Plaintiffs now raise similar arguments to what they raised in their post-trial motions. Their principal claim of error is that the trial court improperly allowed

---

[2] Plaintiffs' JNOV motion also asked the trial court to make factual findings on causation, based on the RFA responses and the testimony of the experts.

7

Rothstein to contradict her "unambiguous" responses to RFAs Nos. 13, 34, and 35, leading to an erroneous jury verdict, and so the case should be remanded for a new trial. Their secondary argument is that the RFA responses, combined with the expert testimony at trial, conclusively establish liability, and so the trial court should have granted the JNOV motion. They ask that this court rule in their favor on liability and remand the case for a trial on damages, "the only issue left to resolve."

## A. Standard of Review

As a general matter, an appellate court applies an abuse of discretion standard of review to evidentiary rulings by the trial court, including to the denial of motions in limine to preclude certain evidence. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.) That typically means that the trial court's ruling " 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Ibid.*, quoting *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Trial courts likewise have broad discretion in granting or denying a motion for new trial. (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 59.) A denial of a JNOV motion is reviewed for substantial evidence: if substantial evidence supports the jury's verdict, the denial will be upheld. (*Licudine v. Cedars-Sinai Med. Ctr.* (2016) 3 Cal.App.5th 881, 891.)

## B. The Role of Requests for Admissions

RFAs are a unique discovery device. In fact, "it has long been recognized that requests for admission[s] are 'not really a discovery procedure.' [Citations.]" (*City of Glendale v. Marcus Cable Associates, LLC* (2015) 235 Cal.App.4th 344, 352.) Their primary purpose is not to obtain new information, but rather to "narrow discovery, eliminate undisputed issues, and shift the cost of proving certain matters." (*Id.* at p. 353.) "Although admissions are dispositive in most cases, a trial court retains discretion to

8

determine their scope and effect. An admission of a fact may be misleading. In those cases in which the court determines that an admission may be susceptible of different meanings, the court must use its discretion to determine the scope and effect of the admission so that it accurately reflects what facts are admitted in the light of other evidence." (*Fredericks v. Kontos Industries, Inc.* (1987) 189 Cal.App.3d 272, 277 (*Fredericks*).)

The case law provides a number of illustrations of the breadth and limits of a trial court's discretion. For example, where a plaintiff admitted the existence of a written contract, not only in RFA responses but also in an answer to a compulsory cross-complaint, the Court of Appeal held that it was reversible error for the trial court to consider contrary evidence and ultimately find that there was no contract. (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1272-1273 (*Valerio*).) By contrast, in *Fredericks*, even though the plaintiff admitted in an RFA response that he had agreed to a written schedule of "progress payments" to the defendant, the Court of Appeal concluded that the broad language of the RFA left some ambiguity as to whether the payment schedule was subject to the performance of actual work by the defendant— i.e., "progress" for those "progress payments." (*Fredericks*, *supra*, 189 Cal.App.3d at pp. 276-277.) The court observed that "more narrow" language in the RFA would have eliminated this ambiguity, but in this particular instance, the trial court properly exercised its discretion to admit evidence that "explained" the admission rather than "contradict[ed]" it. (*Id.* at pp. 277-278.)

Similarly, in *Burch v. Gombos* (2000) 82 Cal.App.4th 352, 359-360, the defendants admitted that they did not "have" certain evidence in an RFA response, but this did not preclude them from using *later-acquired* evidence, as there was no affirmative duty to supplement their discovery responses. According to the court, even though "the RFA and admission were not ambiguous in precisely the same way as those in issue in *Fredericks*, the trial court was still faced with a situation where it needed to

9

determine the 'scope and effect' of the admission." (*Id.* at p. 360.)  It was therefore not error for the trial court to interpret the RFA as being "limited to [plaintiff's] knowledge as of the time the admission was made." (*Ibid.*)

Finally, in *Marquez v. State Department of Health Care Services* (2015) 240 Cal.App.4th 87, 125, the court held that the admission of a long and convoluted RFA (" 'For children who have both Medi-Cal coverage and OHC and whose non-custodial parents have been ordered by a court to provide "medical support" (i.e.[,] health insurance), Respondent DHCS'[s] policies and procedures do not *ensure* that the Medi-Cal program pays health care providers for providing service(s) to these children when the OHC has not [been] paid for these service(s) within 30 days of provision of the service(s)') was "not an unqualified admission."  There was "some ambiguity as to what [Respondent] meant by agreeing that its policies and procedures do not 'ensure' that Medi-Cal pays providers when the OHC has failed to pay within 30 days." (*Ibid.*)  As a consequence, "the trial court did not err" in admitting and considering other evidence "to determine what, in fact, respondents' relevant procedures are." (*Ibid.*, citing *Fredericks, supra*, 189 Cal.App.3d. at pp. 277-278.)

## C.     Analysis

### 1.     Rothstein's Admission That She Felt a "Lump"

In this case, Plaintiffs argue that it was improper for the trial court to allow Rothstein and her standard-of-care expert, Phillips, to testify "contrary" to her admissions, including the admission that she felt a "lump."  The first problem with this argument is that any objection as to RFA No. 13 was not properly preserved for appeal.  As noted above, RFA No. 13 was not mentioned in the written motions in limine (Nos. 1 and 2), it was not raised at the pretrial conference on June 7, 2024, and it was not the basis for any objection by Plaintiffs' counsel to the trial testimony of Rothstein or Phillips.  As such, the argument was forfeited.  (See Evid. Code, § 353 ["A verdict or

10

finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made …."]; *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 563-564 [argument forfeited on appeal because defendant "fail[ed] to make an objection below that satisfied the requirements of Evidence Code section 353"].) The first time Plaintiffs raised the issue of RFA No. 13 was in their post-trial motions, and that was already too late.

Second, even if we were to address the merits of the argument, we would note that Rothstein did not actually contradict her response to RFA No. 13: she admitted that she felt a "lump" in June 2019, and she also explained that "[a] lump is a complaint," not a diagnosis. It was Phillips who provided arguably inconsistent testimony, but it was also apparent from his statements at trial that he was operating under a definition of "lump" that may have been different from Rothstein's or from the questioning attorney's. As noted in the exchange quoted above, when given the opportunity to "qualify" or clarify the meaning of "lump" on cross-examination of Phillips, Plaintiffs' counsel expressly declined to do so. Plaintiffs' counsel also did not clear up Phillips's interpretation of "lump," "mass," "thickening," or "cyst" anywhere else in the trial transcript, despite extensive questioning of him in front of the jury using these terms. Based on a review of Phillips's testimony as a whole, it appears that he viewed a "lump" or "mass" as something that was more serious than a "thickening" or "cyst," but still not something that was necessarily cancerous. Under these circumstances, we would hold that the admission in RFA No. 13 was "susceptible of different meanings," such that it was proper for the trial court to "use its discretion to determine the scope and effect of the admission so that it accurately reflects what facts are admitted in the light of other evidence." (*Fredericks*, *supra*, 189 Cal.App.3d at p. 277.)

11

In their reply brief, Plaintiffs point out that Rothstein never objected to RFA No. 13 on the ground that it was ambiguous, and they also note that the trial court only provided an "after-the-fact" description of Rothstein's admissions as "equivocal."[3] But this is not determinative. We agree with other courts that have concluded that the trial court is in the best position to decide whether an admission is "misleading" or "susceptible of different meanings" in the context of the case as a whole—i.e., "in the light of *other* evidence" at trial. (E.g., *Fredericks*, *supra*, 189 Cal.App.3d at p. 277, italics added.) It is not dependent on whether an opposing party objected at the time of discovery. Indeed, in *Burch* the admission that defendants did not "have" certain evidence was not ambiguous on its face at the time it was made, but the Court of Appeal nevertheless noted that the trial court "was still faced with a situation where it needed to determine the 'scope and effect' of the admission." (*Burch*, *supra*, 82 Cal.App.4th at p. 360.) As in *Fredericks* and *Burch*, we would conclude here that regardless of whether an admission of feeling a "lump" was ambiguous at the time it was made by Rothstein, there was room for clarification and explanation of this admission at trial, and the trial court did not abuse its discretion in allowing for that explanatory testimony.

## 2. Rothstein's Admission That She "Should Have Referred" Jain to an Oncologist

As for the admissions that Rothstein "should have referred" Jain to an oncologist in June 2019 or July 2019 (Nos. 34 and 35), the trial court found the decision on the motion in limine to be a "close call," as its original interpretation of the admissions was in line with Plaintiffs'—i.e., that the admissions appeared to concede a breach of the standard of care. But after hearing counsel's explanation that the admissions were made with hindsight knowledge, the court determined that "the jury would have been left with the wrong impression if [Rothstein] was not allowed to explain her responses."

---

[3] Of course, with respect to RFA No. 13, the finding could only have been made "after-the-fact" because Plaintiffs' counsel did not raise the issue before the verdict.

12

We conclude that it was not an abuse of discretion for the trial court to admit explanatory testimony in connection with RFAs Nos. 34 and 35. Regardless of whether Rothstein and her counsel's explanation regarding hindsight knowledge was the most natural and intuitive interpretation of these RFA responses, it was at least a colorable one, as it was not inconsistent with a broad and generic interpretation of "should have." It was distinguishable from the situation in *Valerio* where the admission of the existence of a written contract foreclosed directly inconsistent evidence of the *non-existence* of such a contract. (*Valerio*, 103 Cal.App.4th at pp. 1272-1273.) Instead, as counseled by *Fredericks*, narrower language in the RFA could have reduced the "opportunity the court [had] to determine its scope and effect." (*Fredericks*, *supra*, 189 Cal.App.3d at p. 277.)[4]

Given the open-ended language of RFAs Nos. 34 and 35, it was not unreasonable or unjust for the trial court to permit further explanation from Rothstein concerning what she "should have" done in Jain's case. While one of the primary purposes of RFAs is to narrow the issues for trial, the trial court reasonably concluded here that its ruling did not have any impact on the parties' trial preparation, as it did not change the expert testimony in the case. We find no abuse of discretion.

### 3.     The Post-Trial Rulings

Having determined that it was an appropriate exercise of discretion for the trial court to admit evidence explaining the RFA responses at issue on this appeal, we conclude, for the same reasons, that the denial of Plaintiffs' new trial motion was not an abuse of discretion. We must also conclude, with this same evidence in the record, that there was substantial evidence to support the jury's verdict that Rothstein did not breach the standard of care, and the JNOV motion was therefore properly denied, as well.

---

[4] For example, if the RFAs here had stated, "Admit that your failure to refer Jain to an oncologist in July 2019 fell below the standard of care" or "Admit that based on your knowledge and what you observed as of June 2019, you should have referred Jain to an oncologist," there would have been less room to parse the language of the request.

13

Although Rothstein testified that she felt a "lump," she also relied on an ultrasound "benign finding." Though she now wished she had referred Jain to an oncologist, she also testified she would not have done "anything different" based on the information she had at the time. In addition, Phillips testified that Rothstein's actions did not fall below the standard of care. Together, the foregoing testimony constituted sufficient evidence for the jury to find no negligence. While there may have been contrary evidence from which the jury could have found Rothstein to be negligent, it is not this court's role to re-weigh the evidence at trial. We simply determine whether there was "substantial evidence—contradicted or uncontradicted—to support the trial court findings." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.)

### III.   DISPOSITION

The trial court's judgment and order denying the post-trial motions are affirmed. Respondent Rothstein is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____
CHUNG, J.*

WE CONCUR:


_____
GROVER, ACTING P. J.




_____
WILSON, J.




Jain et al. v. Rothstein
H052677

_____

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.